## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CAPITOL FEDERAL SAVINGS BANK,**

      **Plaintiff,**

      **v.**                      **Case No.  07-2065-JWL**

**EASTERN BANK CORPORATION,**

      **Defendant.**
_____

## MEMORANDUM AND ORDER

In this lawsuit plaintiff Capitol Federal Savings Bank alleges that defendant Eastern Bank Corporation has misappropriated Capitol Federal's TRUE BLUE service marks. Capital Federal asserts claims against Eastern Bank for infringement of the marks, counterfeiting, false designation of origin, and unfair competition due to Eastern Bank's use of TRUE BLUE as a service mark in connection with banking services.  This matter comes before the court on Eastern Bank's motion to dismiss based on a lack of jurisdiction or improper venue or, alternatively, to transfer this case (doc. #6).  For the reasons explained below, the motion is granted in part and denied in part.  The court concludes that it lacks personal jurisdiction over Eastern Bank, but rather than dismissing the case the court will transfer it to the United States District Court for the District of Massachusetts.

## FACTUAL BACKGROUND

Capitol Federal is a federally chartered mutual savings association with its principal place of business in Topeka, Kansas.  It offers a wide variety of savings and loan services, including general banking services, checking and savings accounts, certificates of deposit, a variety of personal and business loan programs, insurance and investment services, and online banking services.  Capitol Federal is the owner of federal- and state-registered service marks TRUE BLUE, TRUE BLUE ONLINE, and TRUE BLUE ONLINE (with design) (collectively, "the TRUE BLUE marks").  Capitol Federal offers its banking services nationwide, including in New England, in connection with its TRUE BLUE marks. Beginning in about February of 2007, Eastern Bank began using the service mark TRUE BLUE to market, promote, offer for sale, and sell its banking services.  Capitol Federal generally alleges in its complaint that Eastern Bank's adoption and use of the TRUE BLUE mark to identify its banking services and products, including its use of those marks in its advertising and by and through its website, is likely to cause confusion, mistake, or to deceive the purchasing public into believing that the goods and services of Eastern Bank emanate from the same source of the goods and services provided by Capitol Federal, or that there is some connection, sponsorship, or affiliation between their goods and services. Capitol Federal seeks, among other things, an injunction prohibiting Eastern Bank from using Capitol Federal's TRUE BLUE marks in connection with the advertising, offering for sale, or actual sale of services or goods of Eastern Bank as well as in any trade name, domain

2

name, advertising, promotional materials, course materials, or in any meta tags[1] used on or in connection with any domain name of Eastern Bank.

Eastern Bank characterizes itself as a small, local, mutually owned bank headquartered in Boston and conducting business in eastern Massachusetts and contiguous New England states. According to Eastern Bank, its business is focused exclusively on strengthening its local Massachusetts relationships; it has not directed any activity to Kansas and does not intend to do so. Eastern Bank argues that this court lacks personal jurisdiction over it because its advertising is not directed to Kansas and its web site is not directed to Kansas. Additionally, Eastern Bank argues that venue is improper because its use of the TRUE BLUE service marks in the northeast does not support a finding that a substantial part of the events giving rise to Capitol Federal's claims occurred in Kansas. Alternatively, Eastern Bank argues that if the court declines to dismiss the case for lack of personal jurisdiction or improper venue, it should transfer this case to the District Court of Massachusetts.

---

[1] Google defines a "meta tag" as follows:

A special HTML tag that provides information about a web page. Unlike normal HTML tags, meta tags do not affect how the page is displayed. Instead, they provide information such as who created this page, how often it is updated, what the page is about, and which keywords represent the page's content. Many search engines use this information when building their indices.

Google – AdWords Help Center, https://adwords.google.com/support/bin/answer.py?answer=33039&topic=8499.

Capitol Federal contends that Eastern Bank is really asking this court to turn a blind eye to Eastern Bank's size, extensive and interactive internet presence, extensive national marketing campaign, and injurious activities in Kansas to Capitol Federal. Eastern Bank is the largest independent, mutually owned bank in New England. It has at least thirty-eight banks located throughout New England, more than six billion dollars in assets, and more than seventy branches. Additionally, Eastern Bank solicits and transacts business through its website to provide the same or substantially identical services offered by Capitol Federal. Eastern Bank has used the TRUE BLUE mark to direct online consumers to its commercial website by including TRUE BLUE on its home page and other pages on its website, in the titles of online search results, in sponsored advertising, in search engine keywords, and by paying search engines to increase the rank of its website link when online users search for "TRUE BLUE" in association with banking services. And, Eastern Bank has nearly seventy account holders in Kansas. Capitol Federal argues that Eastern Bank's motion should be denied on the grounds that this court may exercise personal jurisdiction over Eastern Bank because its acts of infringement are directed towards Kansas, that venue is proper, and that transfer is unwarranted.

The parties have had the opportunity to conduct jurisdictional discovery, and neither party seeks to conduct any further discovery relating to jurisdiction. In support of Eastern Bank's motion to dismiss, it relies on two declarations from Joseph J. Bartolotta, Senior Vice President of Marketing for Eastern Bank, and the exhibits to his declarations. Capitol Federal relies on a declaration from Cheryl Burbach, one of its attorneys in this lawsuit, and

4

the attached exhibits which largely relate to Eastern Bank's website and Internet presence as well as its media plan. Following is a more detailed description of the relevant jurisdictional facts as established by the affidavits and documentary evidence submitted by the parties.[2]

## A.      **Eastern Bank in the Northeast**

Defendant Eastern Bank Corporation is a mutually owned bank holding company in Massachusetts and headquartered in Boston. Eastern Bank, a trust company also organized in Massachusetts, is a wholly owned subsidiary of Eastern Bank Corporation. As a mutually owned bank, Eastern Bank exists solely for the benefit of its customers and does not have stockholders. All Eastern Bank branches and corporate offices are located in Massachusetts. Eastern Bank is chartered under the laws of Massachusetts and serves eastern Massachusets and contiguous New England states. The majority of Eastern Bank's business is conducted within Interstate 495, which is the outer beltway around Boston. Of Eastern Bank's 695,513 accounts, 96.3% are owned by Massachusetts residents or residents of Rhode Island or New Hampshire. Eastern Bank does not intend to expand its business to Kansas.

Mr. Bartolotta affirmatively states in his affidavit that aside from Eastern Bank's ongoing relationships with its current Kansas customers (discussed below), it has no contacts

---

[2] Consistent with the well established standard for a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court accepts as true the well pleaded allegations in Capitol Federal's complaint to the extent they are uncontroverted by Mr. Bartolotta's declarations. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). To the extent that the parties have submitted conflicting affidavits and other written materials, the court resolves all factual disputes in favor of plaintiff. *See id.*

with Kansas.  It is not licensed to do business in Kansas.  It does not own, lease, or control any real or personal property or assets in Kansas.  It does not have employees, offices or agents, or bank accounts in Kansas.  It does not have shareholders who are Kansas residents. It does not maintain telephone or fax listings within Kansas.  It does not advertise or solicit business in Kansas.  It does not travel to Kansas by way of salespersons or employees.  It does not pay taxes in Kansas.  It does not visit potential customers in Kansas.  It does not recruit employees in Kansas.  Furthermore, it does not generate a substantial percentage of its national sales through revenue generated from customers in Kansas.  As explained in more detail below, Eastern Bank customers currently living in Kansas make up less than 0.008% of Eastern Bank's customers.

**B.      Eastern Bank's Website**

Eastern Bank owns a website, www.easternbank.com.  Mr. Bartolotta's declaration explains that there are two separate interfaces to the website.  For a non-customer visiting the website, the website is primarily informational and describes the services offered by the bank.  While the website can be accessed worldwide, the services are only offered to potential customers in the Massachusetts and surrounding New England states.  For example, the website allows a potential customer to apply online for a personal or business bank account only if the user resides in Massachusetts or surrounding New England states.  When a user enters address information into any of the online application or enrollment forms, a user is limited to inputting only addresses in the Massachusetts or surrounding New England states, including Connecticut, Maine, New Hampshire, Rhode Island, and Vermont.  The

6

only exception to this geographic limitation is that Eastern Bank offers to potential customers the ability to apply for a credit card through a third party, Barclays Bank Delaware. Eastern Bank does not issue these credit cards.

The Eastern Bank website has a second interface that can only be accessed by Eastern Bank account-holding customers. The website is only accessible to customers who have already entered into a business relationship with Eastern Bank. To gain access to this password-protected website, a current customer must sign up for web access using its bank account number, and then create a user identification and password in order to access the banking website. Once logged into the banking website, the site provides the Eastern Bank customer with a convenient option to complete transactions that, prior to online banking, were conducted at a branch or bank loan office, over the telephone, or through written correspondence. These transactions include accessing private financial information, paying bills, transferring funds, or applying for a checking account online. The only Kansas residents that have access to or could gain access to the password-protected area of the website are those who are Eastern Bank customers.

The evidence submitted by Capitol Federal establishes that Eastern Bank prominently displays TRUE BLUE on its home page and on other pages that may be linked to from the home page. Eastern Bank solicits and transacts business through its website to provide the same or substantially identical services offered by Capitol Federal to businesses and individuals. Capitol Federal focuses on the fact that persons and businesses throughout the United States can apply for a credit card directly from Eastern Bank's website. The website

permits consumers throughout the United States, regardless of whether they are existing Eastern Bank customers, to apply for and receive its credit card, which is promoted in association with the TRUE BLUE mark. Indeed, Larry Brubaker, Executive Vice President, Corporate Services for Capitol Federal and a resident of Kansas, applied for Eastern Bank's credit card online. One of the first things he noticed was that the online application had TRUE BLUE displayed as a header. He subsequently received the credit card. He set up online account access for his Eastern Bank MasterCard® to be able to check his available credit line, view his account balance and transaction summary, check balance transfers, and sign up for paperless statements. He has received emails from Eastern Bank in Kansas, which also include his monthly credit card statements bearing the TRUE BLUE trademark.

Capitol Federal seeks to refute Eastern Bank's attempt to downplay the significance of the fact that the credit card application process is administered by a third party, Barclays Bank Delaware. Capitol Federal contends that at the time the lawsuit was filed, the online credit card application did not contain a disclaimer that the credit card was administered by a third party. The court has examined Capitol Federal's Exhibit I. It advertises the credit card as "The *New* Eastern Bank MasterCard® Credit Card" (emphasis in original). But, both the informational screen and the online credit card application agreement disclose that the credit card is issued by Barclays Bank. The Co-Branded Credit Card Agreement between Eastern Bank and Barclays Bank does provide for Eastern Bank to be paid account fees, marketing fees, and transaction fees resulting from the sale of the credit cards. Additionally, although the credit card application may now purport to be limited to those residing in the

8

New England area, the record reflects that this was not the case at the time this lawsuit was filed.  At that time, anyone could complete the credit card application on Eastern Bank's website.

Eastern Bank contends that its website is designed (now) to prevent residents outside of New England (including Kansas) from applying online for personal or business banking services.  Eastern Bank's online banking services are available in Kansas to existing Eastern Bank customers who have applied for and obtained a password.  But, Kansas residents cannot apply for new banking services online, as they cannot complete the application.  According to Mr. Bartolotta's declaration, Mr. Brubaker is the only Kansas resident known to have ever obtained an Eastern Bank credit card online.  Eastern Bank recently reconfigured its website so that a visitor who wishes to apply for a credit card must identify himself or herself as a resident of one of the New England states before reaching the portion of the website containing the application.  Thus, Eastern Bank contends that only New England residents or those willing to falsely identify themselves as New England residents can apply for a credit card via the Eastern Bank website.

**C.**      **Eastern Bank's Advertising Efforts**

According to Mr. Bartolotta's declaration, Eastern Bank's advertising is primarily directed to Massachusetts residents, but may also be heard or seen in contiguous New England states.  Eastern Bank radio and television advertisements reach listeners in Massachusetts and contiguous New England states. Eastern Bank's TRUE BLUE marketing campaign included television advertisements during the Super Bowl, but those

9

advertisements were limited to a local, regional broadcast across Massachusetts and contiguous New England states. Those advertisements were not broadcast in Kansas. Eastern Bank's newspaper advertisements reach residents of Massachusetts and contiguous New England states. Eastern Bank advertises in The Boston Globe and The Boston Herald. These newspapers reach the Boston area as well as surrounding New England states. Eastern Bank also advertises in community newspapers. The community newspapers are only circulated in Massachusetts. Eastern Bank's radio, television, and newspaper advertising does not reach customers anywhere west of Connecticut and does not reach Kansas. Eastern Bank's web-based advertising is targeted to Massachusetts and surrounding states except for advertising on Herald Interactive and GateHouse Online, where the user base is substantially limited to Massachusetts residents.

Eastern Bank has used the TRUE BLUE mark to direct online consumers to its commercial website by including TRUE BLUE on its home pages and other pages on its website. Eastern Bank has spent millions promoting the TRUE BLUE mark in connection with its services and products. The court has carefully reviewed the media plans relied on by Capitol Federal, and finds that Eastern Bank's TRUE BLUE marketing campaign was unquestionably designed to target Boston, Massachusetts, and the surrounding market for banking services. The only exception is that it appears Eastern Bank may have expended monies in connection with the national search engines Google and Yahoo!. Even so, Capitol Federal has not submitted any evidence from which the court could find that Eastern Bank had any intent to target the Kansas market by virtue of its media plan. To the extent that its

10

advertising may ultimately have reached beyond Massachusetts and the contiguous states, it is clear to the court that the broader scope was purely incidental to Eastern Bank seeking to reach its target audience.

This documentary evidence seems to support the statements made in the second declaration submitted by Mr. Bartolotta. He states that Eastern Bank's print, broadcast, and online advertisements target consumers within the Interstate 495 beltway around Boston. Although some of its advertisements carry over into a wider New England market, it has never made an effort to market its services in Kansas. Mr. Bartolotta further clarifies that Eastern Bank has made no effort to improve its position in search engine results by online users who search for "TRUE BLUE" in connection with banking services. It has paid the online search company Google to list Eastern Bank product ads when certain searches are conducted, but these ads are "geo-targeted"[3] and, therefore, not visible to anyone outside of Massachusetts.

**D.     Eastern Bank's Kansas Customers**

---

[3] Google explains the concept of geo-targeting as follows:

> Geo-targeting lets you target your ads to specific countries and languages. When you create a new AdWords campaign, you select the countries or regions and the language(s) for your ad. That campaign's ads will appear only to users who live in those areas and who have selected one of those languages as their preference.

Google – AdWords Help Center, https://adwords.google.com/support/bin/answer.py?answer =6317.

In total, Eastern Bank has sixty-four customers with Kansas mailing addresses. These customers collectively own a total of fifty-four accounts. The services received by Kansas residents and businesses include cash reserve lines of credit, certificates of deposit, checking accounts, commercial checking accounts, credit cards, installment loans, insurance, money market accounts, and savings accounts. Of the fifty-four accounts, nineteen were opened by individuals who had a Massachusetts mailing address at the time of opening the account, and they subsequently relocated to Kansas. Seventeen of the accounts originated with Plymouth Savings Bank, which was subsequently acquired by Eastern Bank. The remaining eighteen accounts originated from Kansas residents seeking out Eastern Bank services. Eastern Bank states that it did not solicit any of these accounts in Kansas. These account holders receive at least monthly statements from Eastern Bank, but Mr. Bartolotta testified in his deposition that the statements Eastern Bank mails to its customers do not contain the TRUE BLUE tagline.

## E.     Other Contacts

Lastly, Capitol Federal points to three more contacts between Eastern Bank and Kansas. Eastern Bank made payments to Fred Pryor Seminars and Skillpath Seminars, both located in Kansas, for seminar/training services. Also, Eastern Bank has received correspondence from the Kansas Department of Revenue involving one of its Kansas customers.

## LEGAL STANDARD FOR A

12

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"The burden of establishing personal jurisdiction over the defendant is on the plaintiff." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). When the evidence presented on the motion to dismiss consists of affidavits and other written materials, as is the case here, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In deciding whether the plaintiff has made the necessary prima facie showing, the court resolves any factual disputes in plaintiff's favor. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation omitted).

## DISCUSSION

For the reasons explained below, the court concludes that Capitol Federal has not made a prima facie showing that this court has personal jurisdiction over Eastern Bank. Specifically, Capitol Federal has not established that either specific or general jurisdiction exists based on a minimum contacts analysis. This is largely because the record does not reflect that Eastern Bank has purposefully availed itself of the benefits of conducting

business in Kansas. And, even to the minimal extent that it has purposefully directed activities at Kansas residents, Capitol Federal's claims do not arise from those contacts. The court will not dismiss this case, but instead will transfer the case, in the interests of justice, to the United States District Court for the District of Massachusetts.

## A.    Personal Jurisdiction

In determining whether a federal court has personal jurisdiction over a non-resident defendant, the court must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotation omitted); *accord Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Because the Lanham Act does not, by itself, provide for nationwide service of process, Fed. R. Civ. P. 4(k)(1)(A) refers the court to the Kansas long-arm statute which allows jurisdiction to the full extent permitted by due process and, therefore, the court proceeds directly to the constitutional issue. *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, — F.3d —, 2007 WL 1678032, at *3 (10th Cir. June 12, 2007) (publication forthcoming); *OMI Holdings, Inc.*, 149 F.3d at 1090.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Therefore, the "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the

14

forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The minimum contacts standard may be met in two ways. *Benton*, 375 F.3d at 1075. First, a court may assert specific jurisdiction over a nonresident defendant "'if the defendant has "purposefully directed" his [or her] activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 472). Second, a court may have general jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Id.* (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 (1984)).

Even if the defendant's actions create sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction over the defendant "would offend traditional notions of 'fair play and substantial justice.'" *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Burger King Corp.*, 471 U.S. at 476). This question turns on whether the district court's exercise of personal jurisdiction over the defendant is reasonable under the circumstances of the case. *Id.* (quoting *Burger King Corp.*, 471 U.S. at 477-78).

In this case, Capitol Federal asserts that Eastern Bank is subject to both specific and general jurisdiction. Thus, the court will examine each.

### 1.    Specific Jurisdiction

In seeking to establish personal jurisdiction over Eastern Bank, Capitol Federal relies on essentially four different sets of contacts: (1) Eastern Bank's website; (2) its advertising; (3) its Kansas customers; and (4) three other contacts.

a.   *Contacts Based on Eastern Bank's Website*

Capitol Federal relies primarily on Eastern Bank's website as a basis to establish personal jurisdiction.  Before delving into the significance of the arguably relevant contacts, the court first wishes to address the fact that the nature of Eastern Bank's website user interface has changed somewhat since this lawsuit was filed.  For example, at the time this lawsuit was filed a credit card applicant did not need to identify himself or herself as a resident of one of the New England states.  Additionally, Kansas residents can no longer apply for new banking services online.  In examining the quality and nature of Eastern Bank's contacts with the forum, the court must examine the circumstances as they existed at the time this lawsuit was filed, not later.  *See Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir.) (noting minimum contacts must exist at the time the cause of action arose, the time suit was filed, or within a reasonable period of time immediately before suit was filed), *cert. denied*, 127 S. Ct. 217 (2006); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) (noting "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed").  Thus, the court will not address the more recent changes Eastern Bank has made to its Internet website, but instead will confine its analysis to the nature of the website as it existed at the time this lawsuit was filed.

The seminal authority for evaluating the extent to which Internet contacts may establish personal jurisdiction is *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003); *see, e.g.*, *Intercon, Inc.*, 205 F.3d at 1248 (citing *Zippo*, among other cases, in a

16

personal jurisdiction analysis involving Internet transmissions); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (applying the standards from *Zippo*). *Zippo* involved a series of trademark claims brought by Zippo Manufacturing (the maker of Zippo lighters) in Pennsylvania against Zippo Dot Com, a California corporation that ran an Internet news website. There, the defendant's contacts with the forum state "occurred almost exclusively over the Internet": the defendant did not have offices, employees, or agents in the forum; it advertised there only through its website; and only two percent of its news service subscribers lived there. 952 F. Supp. at 1121. The court reasoned that the constitutionality of an exercise of personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. The court set forth a "sliding scale" analysis for Internet-based personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (citations omitted). The court then found that Zippo Dot Com was doing business over the Internet by virtue of entering into thousands of electronic contracts with Pennsylvania

17

residents, and this constituted purposeful availment of doing business in Pennsylvania. *Id.* at 1125-26.

Since *Zippo*, the Courts of Appeals have incorporated various additional requirements for Internet contacts that, collectively, remain true to the Supreme Court's "purposeful availment" requirement. For example, in *ALS Scan v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002), the Fourth Circuit expressly incorporated an "intentionality" requirement, stating

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) *with the manifested intent of engaging in business or other interactions within the State*, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714 (emphasis added). Similarly, in *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002), the Sixth Circuit held that the purposeful availment requirement is satisfied "if the web site is interactive to a degree that reveals *specifically intended interaction* with residents of the state." *Id.* at 890 (emphasis added). In *Toys "R" Us, Inc.*, the Third Circuit concluded that

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, *by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site*, or through sufficient other related contacts.

318 F.3d at 454 (emphasis added).

18

In this case, there are really three different components to Eastern Bank's website, each of which is at a different place along *Zippo*'s sliding-scale spectrum.  First, as to non-customers Eastern Bank's website is largely passive in the sense that it "does little more than make information available to those who are interested" because Eastern Bank "has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Zippo Mfg. Co.*, 952 F. Supp. at 1124.  This aspect of Eastern Bank's website does not establish contacts with the state of Kansas so as to support the exercise of this court's personal jurisdiction.  *See, e.g.*, *Soma Med. Int'l*, 196 F.3d at 1297 (passive informational website did not subject the website's creator to personal jurisdiction); *see also, e.g.*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (same, website that posted information about the defendant's products and services).

The second component is Eastern Bank's offering of a credit card application from its website.  This aspect of the website is at the opposite end of the sliding scale, i.e., the doing-business-over-the-Internet end of the spectrum.  At this end of the spectrum, personal jurisdiction is proper "[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Zippo Mfg. Co.*, 952 F. Supp. at 1124.  Here, Mr. Brubaker's experience with Eastern Bank's online credit card application establishes that this component of the website is unquestionably used to enter into a contract that involves the knowing transmission of a computer file over the Internet.  Additionally, the fact that he was subsequently able to set up online account access and receive his monthly statements by email establishes that the

19

contract can involve the repeated transmission of files over the Internet.  The problem with Capitol Federal's reliance on this component of Eastern Bank's website is twofold.  First, although the record establishes that Eastern Bank is doing business over the Internet in this respect, Capitol Federal has not established that Eastern Bank is doing business *in Kansas*. Capitol Federal has pointed to nothing more than one business relationship Eastern Bank established with a Kansas resident as a result of the online credit card application and even that relationship appears to have been orchestrated in furtherance of this litigation, as Mr. Brubaker is an Executive Vice President of Capitol Federal.  Second, the record does not establish that by virtue of the online credit card application Eastern Bank was purposefully availing itself of the privilege of conducting business in Kansas.  In Mr. Bartolotta's declaration, he states that Mr. Brubaker is the only Kansas resident known to have ever obtained an Eastern Bank credit card online.  This being the only evidence in the record addressing the "purposeful availment" prong of the court's analysis, it does not establish that Eastern Bank set up its online credit card application specifically intending to issue credit cards to Kansas residents.  Moreover, given that the credit card was apparently issued by Barclays Bank, it is unclear whether Eastern Bank was even aware at the time it issued the credit card that it was issuing a card to a Kansas resident.  This is precisely the type of "fortuitous," "random," and "attenuated" contact that the Supreme Court has held insufficient to warrant the exercise of jurisdiction.  *See Burger King Corp.*, 471 U.S. at 475.

In this sense, this case is distinguishable from the nature and quality of "doing business over the Internet" contacts found sufficient to establish personal jurisdiction in

*Zippo*.  There, the California defendant had contracted to conduct electronic commerce with approximately three thousand individuals and seven Internet access providers in the forum state (Pennsylvania).  952 F. Supp. at 1126.  This case is much more akin to the facts of *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003).  In that case, plaintiff Toys "R" Us alleged that Step Two, a Spanish corporation, used its Internet websites to engage in trademark infringement, unfair competition, misuse of the trademark notice symbol, and unlawful "cybersquatting," in violation of the Lanham Act, 15 U.S.C. § 1501 *et seq.*, and New Jersey state law by using "Imaginarium" marks in connection with its sales of toys over the Internet.  *Id.* at 448.  The Third Circuit reasoned that

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

*Id.* at 454.  The court concluded that Toys "R" Us failed to satisfy the purposeful availment requirement partly because Step Two's websites, while commercial and interactive, did not appear to have been designed or intended to reach customers in New Jersey.  *Id.*  The court further noted that the record could not support a finding that Step Two knowingly conducted business with New Jersey residents because the only two documented sales were two contacts orchestrated by Toys "R" Us.  *Id.*  The Third Circuit explained that these "two documented sales appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts the Supreme Court has held insufficient" to satisfy due process.  *Id.* at 454-55.  Because

Capitol Federal has established nothing more than that the credit card application component of Eastern Bank's website generated one fortuitous, random, and attenuated contact with a Kansas resident, apparently orchestrated for the purpose of this litigation, this contact is insufficient to support the exercise of personal jurisdiction over Eastern Bank.

The third component of Eastern Bank's website is the online banking available to its customers. In this respect, it seems that the website is most aptly characterized as interactive. As such, it occupies the middle ground on *Zippo*'s sliding-scale analysis and the court must examine " the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." 952 F. Supp. at 1124. Certainly, such online banking services could involve the exchange of information sufficient to render the exercise of jurisdiction constitutional. But, Capitol Federal has not established a nexus between the online banking services offered by Eastern Bank and any of its Kansas customers. To be sure, Eastern Bank has sixty-four account holders with a Kansas mailing address. In order for those customers to be able to use Eastern Bank's online banking services, however, customers must sign up for Web access. Importantly, Capitol Federal has submitted nothing from which the court could find that at the time this lawsuit was filed any Kansas customer of Eastern Bank had signed up for Web access, other than Mr. Brubaker's online credit card account access which the court discounts for the same reasons as discussed above. In short, Capitol Federal has not submitted to the court any information from which the court could evaluate the level of interactivity between Eastern Bank's online banking interface and its Kansas customers. In the absence of evidence of the required nature and quality of interaction between Eastern

Bank's website and the forum, then, this component of Eastern Bank's website is also insufficient to support the exercise of personal jurisdiction. *Cf. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 400 (4th Cir. 2003) ("semi-interactive" website which made it possible for a user to exchange information with the host computer was insufficient to support the exercise of jurisdiction under *Zippo* analysis where the only concrete evidence of online exchanges between the defendant's website and forum residents was a single donation initiated by plaintiff's counsel).

> b.    *Eastern Bank's Advertising*

Capitol Federal also points to evidence concerning Eastern Bank's media campaign in connection with its TRUE BLUE marks.  In this respect, the court first wishes to comment on the nature of Capitol Federal's evidence on this point.  Attached to Ms. Burbach's affidavit are a number of exhibits.  Approximately ten of these exhibits, which collectively are approximately one inch thick, are apparently intended to support Capitol Federal's argument that personal jurisdiction is proper based on Eastern Bank's advertising campaign. These exhibits generally consist of printouts from various websites such as Google, a radio station's website, a media website, excerpts from various media documents and plans, and an advertising proposal.  Capitol Federal rather categorically refers the court to these documents in support of its overriding theory, which seems to be that Eastern Bank's media campaign is broad enough to reach Kansas residents.  As explained in the background facts above, however, the court has carefully reviewed the documents referred to by Capitol Federal, and concludes that the record establishes that Eastern Bank's media campaign was

decidedly local in focus, targeting the Massachusetts market and contiguous states. To the extent that the advertising campaign reached out beyond that geographic area, the result was purely incidental to Eastern Bank's locally focused advertising campaign.

Capitol Federal, as the plaintiff, has the initial burden of making a prima facie showing of jurisdiction by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over Eastern Bank. This includes a requirement that Capitol Federal show that Eastern Bank "purposefully directed" its advertising at Kansas residents. The documentary evidence submitted by Capitol Federal simply does not support such a finding. Eastern Bank's advertising, then, which targeted the New England states and reached Kansas residents only incidentally, if at all, is insufficient to establish purposeful availment in this case. *Cf. Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (no purposeful availment where the only acts identified as being directed at the forum were a passive website and use of the trademark in the domain name where there was no evidence that those actions were expressly aimed at the forum); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 481 (6th Cir. 2003) (evidence that the defendant attempted to market nationally was insufficient where the record did not contain any evidence of advertising directly targeting or even actually reaching the forum).

### c.   Eastern Bank's Kansas Customers

The court has no difficulty concluding that Eastern Bank has purposefully availed itself of the privilege of doing business in Kansas with respect to the majority of its Kansas customers. Although approximately one-third of those customers became Eastern Bank

customers while they were Massachusetts residents, then subsequently relocated to Kansas, Eastern Bank intentionally established relationships with the other two-thirds of those customers while they were Kansas residents.  As to the one-third of the accounts that originated with Plymouth Savings Bank, certainly Eastern Bank's acquisition of Plymouth Savings Bank (and its relationship with Plymouth Savings Bank's customers, as a result) must have been intentional.  And, as to the one-third of the accounts that originated from Kansas customers, allegedly seeking out Eastern Bank's services, Eastern Bank was undoubtedly well aware of the fact that they were Kansas residents at the time those accounts were established.  Notwithstanding the fact that Eastern Bank purposefully availed itself of doing business with Kansas residents, however, these contacts can serve as the basis for exercising personal jurisdiction only if this "litigation results from alleged injuries that arise out of or relate to those activities."  *Burger King Corp.*, 471 U.S. at 472 (quotations and citations omitted); *accord Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005) (quotation omitted).

Here, there is simply no evidence that Capitol Federal's trademark infringement and related claims arise out of or relate to Eastern Bank's relationships with its Kansas customers. The only evidence in the record which correlates these Kansas account holders with Eastern Bank's use of the TRUE BLUE mark is that these account holders receive at least monthly statements from Eastern Bank.  Mr. Bartolotta has affirmatively stated under oath, however, that the statements Eastern Bank mails to its customers do not contain the TRUE BLUE tagline.  Additionally, as explained previously there is no evidence that any of those Kansas

customers use Eastern Bank's website. Accordingly, the record does not establish any nexus between Eastern Bank's Kansas customers and Capitol Federal's claims associated with Eastern Bank's use of the TRUE BLUE mark in connection with its banking services.

> ### d.    Other Contacts

The court also finds that Eastern Bank's other contacts with the state of Kansas, as relied on by Capitol Federal, do not support this court's exercise of personal jurisdiction over Eastern Bank. These contacts consist of payments to Fred Pryor Seminars and Skillpath Seminars, both located in Kansas, for seminar/training services, as well as the fact that Eastern Bank has received correspondence from the Kansas Department of Revenue involving one of its Kansas customers. The record does not establish that any of these contacts were the result of Eastern Bank purposefully availing itself of the privilege of doing business in Kansas, or that Capitol Federal's claims in this lawsuit arise from or relate to those contacts.

In sum, then, the court finds that Capitol Federal has not met its burden of establishing a prima facie case by demonstrating, via affidavit or other written materials, facts that if true would support the exercise of specific personal jurisdiction over Eastern Bank. As to the bulk of the contacts relied on by Capitol Federal, the record does not support a finding that Eastern Bank made those contacts with the state of Kansas by purposefully directing its activities toward Kansas residents. Instead, those contacts are the type of fortuitous, random, and attenuated contacts which cannot support the exercise of specific jurisdiction. Even as to those contacts which were purposeful (such as Eastern Bank's relationships with its

26

Kansas customers), Capitol Federal has not established that its claims arise from or relate to those contacts. Accordingly, the court may not exercise specific jurisdiction over Eastern Bank in this case.

### 2. General Jurisdiction

General jurisdiction lies even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). General jurisdiction arises only if a foreign corporation's contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). "In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state." *Trierweiler*, 90 F.3d at 1533; *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (noting that for general jurisdiction the defendant must be conducting "substantial and continuous local activity in the forum state"). In assessing contacts with the forum, the court considers such factors as (1) whether the corporation solicits business in the state through a local office or agents, (2) whether the corporation sends agents into the state on a regular basis to solicit business, (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings, or bank accounts, and (4) the volume of business conducted in the state by the corporation. *Id.*

Based on the current record, the court finds that general jurisdiction is clearly lacking. Eastern Bank is a Massachusetts bank. As explained in detail above, it does not engage in

any business in Kansas other than continuing to provide banking services to its customers with Kansas addresses.  Although these customer relationships are undoubtedly continuous, they are by no means substantial because they consist of only sixty-four customers who make up less than 0.008% of Eastern Bank's customers.  *Cf. First Mortgage Corp. v. State Street Bank & Trust Co.*, 173 F. Supp. 2d 1167, 1171-72 (D. Utah. 2001) (no general jurisdiction over Massachusetts bank which did not generate a substantial percentage of its sales through revenue generated from Utah customers); *Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d 903, 911 (S.D. Tex. 2001) (client list containing the names of more than fifty different customers with Texas addresses, without more, did not support the exercise of general jurisdiction).  Additionally, Eastern Bank does not intentionally advertise in the state of Kansas.  *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) (advertising in national publications that makes its way into the state is insufficient to justify general jurisdiction where there is no direct advertising in the forum).

### 3. Conclusion

In sum, the court finds that Eastern Bank lacks the requisite minimum contacts to support the exercise of either specific or general personal jurisdiction over it.  Because Eastern Bank has not met its burden of establishing a prima facie case of jurisdiction, the court need not need to consider whether the exercise of jurisdiction over Eastern Bank would offend traditional notions of fair play and substantial justice.  Instead, the court must determine whether to dismiss the case or transfer it to the District of Massachusetts.

### B. Dismiss or Transfer

28

This court has the power to transfer Capitol Federal's case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1631, which provides, in pertinent part, as follows:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other court in which the action could have been brought at the time it was filed . . . .

Where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, the correct course of action is to transfer pursuant to § 1631. *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006). In this case, it is clear that this lawsuit could have been brought in the District of Massachusetts. And, the court finds that the interests of justice favor transfer rather than outright dismissal of the case, particularly because transfer should facilitate resolution of Capitol Federal's pending motion for a preliminary injunction. Although that motion is not yet at issue, transferring the case should provide for a quicker ruling on the motion than if the court were to dismiss the case. Accordingly, the court will transfer this case to the District of Massachusetts pursuant to 28 U.S.C. § 1631.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Eastern Bank's motion to dismiss or, alternatively, to transfer (doc. #6) is granted in part and denied in part. The court concludes that it lacks personal jurisdiction over Eastern Bank, but rather than

dismissing the case the court will transfer it to the United States District Court for the District

of Massachusetts pursuant to 28 U.S.C. § 1631.


**IT IS SO ORDERED** this 29th day of June, 2007.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

30